UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09CV-596-H

PAVILION PARK, LLC                                                                               PLAINTIFF

V.

FIRST AMERICAN TITLE
INSURANCE COMPANY                                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Pavilion Park, LLC ("Pavilion Park") initiated this action against First American Title Insurance Company ("First American") grounded upon contractual claims under First American's title insurance policy.[1]  Both sides have now moved for summary judgment. The Court finds that the contract issues are relatively straightforward.  The Court will dismiss Pavilion Park's claims.

I.

This dispute arises from Pavilion Park's purchase of a parcel of land located at 5211 Upper River Road in Louisville, Kentucky (the "Property"), at a foreclosure sale on September 1, 2005, with the intention of developing it in some manner.

Although Plaintiff negotiated the contractual right to conduct an environmental assessment, it did not do so and purchased the Property "as is."  These circumstances have no direct bearing upon the Court's inquiry.  The more relevant fact is that First American issued a standard title insurance policy (the "Policy") as to the Property.  The Policy provides coverage

---

[1] Plaintiff has also asserted related claims for (1) breach of covenant of good faith, (2) unfair claims settlement practices, (3) violation of the Kentucky Consumer Protection Act and (4) punitive damages.

for loss or damage up to $200,000 by reason of the following:

> "A. Title to the estate or interest in The Property being vested other than as stated there;
> B. Any defect in or lien or encumbrance on the title to The Property;
> C. Unmarketability of the title to The Property;
> D. Lack of a right of access to and from The Property."

The Policy defines "unmarketability of the title" as:

> An alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

Another provision of the policy excludes from coverage:

> Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to . . . environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

These provisions comprise standard verbiage for a title insurance policy. No other provisions of the Policy are directly pertinent. As part of the process which resulted in issuance of the Policy, First American engaged Fred Simon as its attorney and agent to prepare a title report. As a consequence of his report, the Policy contained a list of exceptions to its coverage set forth in Schedule B.

On October 12, 2007, Plaintiff apparently became aware for the first time of an agreed order and restrictive covenant dated February 6, 1981, which documented a previously

2

undisclosed and unlawful use of the Property as a solid waste disposal site. The restrictive covenant was properly recorded in the County Clerk's office and stated in pertinent part:

> From and after such acceptance and approval, Mannering, owner of the property referred to above and a party hereto, her heirs, successors, and assigns in title, *shall be solely responsible for any further acts which may be required* by the Department for Natural Resources and Environmental Protection as a result of any *future problem or situation* which *may arise* from the disposal of said waste on said property . . . .

The Department for Natural Resources approved the closing and remediation of the site. However, the covenant was expressly designated as a "restrictive covenant running with the land" and was binding upon all subsequent purchasers of the Property. Neither Simon nor First American mentioned or identified the restrictive covenant in the Policy and did not list the covenant as a specific exception to it.

Pavilion Park says that the restrictive covenant is an encumbrance on the Property because it precludes development of the Property absent certain cleanup and disposal activities which the Department for Natural Resources may require. Complying with those requirements will make development of the Property economically unfeasible and diminished the value of the Property. Consequently, Pavilion Park says, First American is liable under the Policy. First American declined coverage and this lawsuit followed.

## II.

The essential question at issue here sounds in contract: Has Plaintiff sustained any damage by reason of a cause for which the Policy provides coverage? The Policy insures against four causes of damage, only one of which is realistically applicable here. Therefore, the question here is whether the undisclosed restrictive covenant amounts to a "defect in or lien or

3

encumbrance on the title" under the Policy. Surprisingly, no Kentucky state cases address the precise matter at issue here. However, there is plenty of general law pointing to the answer. Moreover, my colleague from the Eastern District, Judge Jennifer Coffman, has authored an excellent and helpful decision. *See Commonwealth Land Title Ins. Co. v. Graoch Assoc.*, 2210 WL 1257748 (E.D. Ky. March 26, 2010).

As a general rule, a title insurance policy provides insurance against a defect or encumbrance on the title, not against an intended use or against some future risk. Am. Jur. 2d Abstracts of Title §16 (2009). Title insurance policies insure against a defect in the title, not against the existence of any particular lien or encumbrance. *Commonwealth Land Title Ins. Co. v. Graoch* at *2. The failure of First American or its agents to discover a particular defect is not the basis for an action on the Policy. *Id.* Pavilion Park's claim must be based on the Policy, not any supposed negligence on the part of Simon. *Id.*

In *Graoch,* Judge Coffman considered whether certain obligations running with the property constitute "encumbrances or title" as defined in a similar title insurance policy. She concluded that title insurance policies generally provide coverage for existence at the time the insurance is issued, but do not cover assessments that might be levied at a later time. The reason is that the current existence of an assessment will prevent passing of title; the potential for a later assessment will not affect passing of title. The Court agrees with these views. Here, the agreed order and restrictive covenant do not state any fact, obligation or ownership interest that would constitute a legal impediment to the interest passing of title to the Property. Thus, for our purposes, the restrictive covenant here is conceptually similar to a future assessment. Neither the assessment nor the covenant constitutes an encumbrance that affects the insured's title to the

4

property.

In this Court's view, the Supreme Judicial Court of Massachusetts provides the best discussion of these issues in *Somerset Savings Bank v. Chicago Title Insurance Company*, 420 Mass. 422, 649 N.E.2d 1123 (1995). Reviewing Massachusetts law that seems consistent with generally accepted principles, the court held that building and zoning laws are not encumbrances affecting title, because such restrictions affect use, not title. *Id.* at 1127. There is a difference between conditions that affect the use and value of property, and actual title marketability. *Id.* An individual can hold clear title to property, even though that property may be economically unmarketable due to some restriction or regulation on its use. *Id.* Title insurance generally does not provide protection for such governmentally imposed impediments on the use of property. *Id.* at 1127-28. All of this discussion is consistent with principles set forth in *Graoch*.

This Court concludes that these same principles are consistent with existing Kentucky law and with the views Kentucky courts would likely approve upon closer consideration. All of these views, as well as the general law of title insurance, support a judgment for First American.

III.

The parties trade a number of arguments which are worthy of comment and has cited a number of tangential cases to support their views. None of these arguments change the Court's conclusion that the Policy does not provide coverage for any loss arising from the latent discovery of the agreed order and restrictive covenant.

The failure of Fred Simon to list the restrictive covenant as an exception on Schedule B of the Policy does not alter First American's responsibility. Pavilion Park did not engage Simon to conduct a title search; it engaged First American to provide title insurance. Though many

5

matters may be listed as exceptions to the title coverage, any listed exception is significant only if the matter itself is one that the Policy covers. That is, the exception to a lien or condition is only significant if the Policy would otherwise provide coverage. Here, even assuming that Simon was negligent in failing to list all of the items of record on the title, the Policy's coverage is unaffected.

In a general sense, one must certainly agree that the restrictive covenant is an encumbrance upon the property. Often, it could be said to restrict one's use of the property. However, one must construe the Policy coverage based upon the clear meaning of all its words. Under the Policy terms, coverage requires that an encumbrance must affect title. Because the covenant does not affect title and, more specifically, the ability to pass title, it is not covered.

The Court does not find that many of the cases cited by the parties to be particularly helpful or relevant. Plaintiff's cases concern whether particular restrictions on use apply to a subsequent purchaser. No one disputes that the restrictive covenant "runs with the land" and governs the rights of a subsequent purchaser, such as Pavilion Park. That is, however, an entirely different and distinct issue from whether such a covenant affects title to the Property under the Policy. The cases which First American cites are generally supportive of its position, but are not binding decisions concerning Kentucky law. Judge Coffman's *Graoch* opinion is the only Kentucky case which remotely addresses the issues here.

Neither the Policy definition of "marketability" or its exclusions provide any help to Pavilion Park. The Policy does not insure against general unmarketability but only when it arises from a "matter affecting the title." Also see *Graoch* at *3-4. The restrictive covenant does not affect the title or the transfer of it. Finally, the exclusion language is inconsequential

6

where the Policy simply does not provide coverage for a particular matter.

IV.

Having found that Pavilion Park cannot make a claim for breach of the title insurance policy, the claims for breach of good faith, unfair claims practices and punitive damages must fail also. Moreover, First American has not said or done anything to mislead Pavilion Park about its coverage. Therefore, no claim lies under Kentucky's Consumer Protection statute.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record